* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the named Employee and the named Employer at all relevant times.
3. The Carrier liable on the risk is correctly named above.
4. The Employee sustained an injury on or about March 2, 2004, with the exact date to be determined by the Industrial Commission.
5. The Employee's average weekly wage is $383.74 per week. Said amount yields a compensation rate of $255.84 per week.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 49 years old. Plaintiff did not complete high school. He obtained his General Equivalency Diploma in 1982. Plaintiff has worked in carpentry his whole life, either working for sub-contractors or as an independent contractor.
2. Plaintiff is an admitted alcoholic who consumes a minimum of 12 beers per day from the time he gets home from work until bedtime. Plaintiff has been drinking alcohol since his early teens.
3. Plaintiff began working for Defendant-Employer in February 2004. Defendant-Employer's owner, Kevin Stone, hired Plaintiff at the recommendation of his friend, John. Mr. Maynard May provided transportation for Plaintiff and several co-workers to get to the job site. Plaintiff does not have a driver's license.
4. On March 1, 2004, Plaintiff got off work at approximately 4:30 P.M. He went to the store and purchased a twelve pack of Budweiser. Plaintiff then went home and proceeded to drink beer in the company of his girlfriend and John. Plaintiff went to bed at approximately 11:30 P.M. with "a buzz" from the alcohol consumption.
5. Plaintiff awoke at approximately 6:00 A.M. on March 2, 2004. He testified that he did not feel the effects of the alcohol from the night before and that he was clear headed and did not have slurred speech. He was picked up by Mr. May at approximately 7:00 A.M. to go to work. Mr. May testified he did not believe Plaintiff to be drunk nor was his speech slurred. Mr. Michael Smith, a co-worker, did not believe Plaintiff to be impaired when he came to work on March 2, 2004. Co-workers testified that he had no outward signs of intoxication, impaired judgment or dull senses. Plaintiff's co-workers did not notice anything unusual pertaining to Plaintiff's appearance or actions. Several of Plaintiff's co-workers did, however, smell alcohol on his breath.
6. The crew stopped at a convenience store prior to arriving at the work site. Plaintiff purchased a soft drink and a honey bun for breakfast. Mr. Smith stated that there was no time for Plaintiff to consume any sort of alcohol prior to the accident after he was picked up by Mr. May.
7. Upon arrival at the job site, the crew split into two groups. Mr. Baker was working on installing ceiling joists. In order to do this, Mr. Baker was standing on plywood attached to the wall. A co-worker named Curtis was handing him up the lumber to install.
8. Plaintiff testified that he lost his balance and attempted to grab a ceiling joist to prevent the fall. The joist was not nailed down and fell with him. Mr. Baker landed on the ground striking his buttocks first. The accident occurred around 9:30 A.M. Plaintiff fell approximately 13 feet. A co-worker testified that a gust of wind came up and caused Plaintiff to lose his balance; however, Plaintiff never attributed his loss of balance to a gust of wind.
9. Plaintiff was in immediate pain. His co-workers contacted Mr. Stone and called an ambulance. Plaintiff was initially taken to Dosher Memorial Hospital. Plaintiff was provided pain medication in transport and at triage. This was the reason for the positive test results for opiates in his blood later that evening. After triage, Plaintiff was transferred to New Hanover Regional Medical Center where he was admitted.
10. Plaintiff was diagnosed with a burst fracture at L1. His hospital stay was for treatment of his burst fracture as well as apparent withdrawal from alcohol. He was discharged from the hospital on March 11, 2004, with restrictions of no lifting, no driving, and no twisting. He was instructed to follow up with Dr. Jon Miller for further care.
11. Plaintiff followed up with Dr. Miller until Defendant-Carrier denied his claim. Plaintiff does not have health insurance and has been unable to obtain any further medical treatment for his injury. Dr. Miller last saw him on May 7, 2004.
12. Dr. Miller testified that Plaintiff was not at maximum medical improvement on May 7, 2004. This was the last appointment that Plaintiff had with Dr. Miller. Dr. Miller was unable to opine if Plaintiff would have any permanent partial disability rating, as he has not seen him since May 7, 2004.
13. According to Dr. Miller, the healing period for a burst fracture is highly variable with the rule being three to six months. Dr. Miller was unable to state what type of restrictions Plaintiff may have.
14. Plaintiff attempted to return to work as a carpenter on two occasions. Due to the heavy work involved, he was not able to stay employed for more than a few weeks at a time because of physical limitations caused by the injuries he received in the fall. Plaintiff worked January 31, 2005 through the end of February 2005.
15. Plaintiff contacted Defendant-Employer regarding employment. Defendant-Employer did not have work available. Plaintiff believes that he could do light-duty work as a trim carpenter, but no such job has been offered to him and he cannot physically do the other jobs for which he has vocational training and skills. Plaintiff is unable to work due to his injury.
16. Plaintiff continues to wear his back brace when his pain increases. Plaintiff states that he has continuous pain in his back. Lifting, bending, prolonged standing or sitting will exacerbate his pain.
17. Defendant-Employer provided Plaintiff with two checks to help him out until the workers' compensation benefits would commence. Defendant-Carrier filed a Form 63, and commenced payments of benefits on March 17, 2004.
18. Defendant-Carrier subsequently filed a Form 61 denying Plaintiff's claim on June 3, 2004, stating that Plaintiff tested positive for an illegal substance. Plaintiff testified that all benefits stopped after that point.
19. At the hearing before the Deputy Commissioner, Plaintiff objected to the lab results being admitted into evidence based upon lack of a chain of custody and also objected to Dr. Shayne C. Gad's testimony as his testimony was based upon the report. Plaintiff's objection was noted and Defendants were allowed the opportunity to depose the medical personnel at the hospital to prove chain of custody.
20. Defendants deposed Dr. Kelly Klinker and Mr. Michael Register, a medical technologist at New Hanover Regional Medical Center, and proved the chain of custody. Dr. Klinker testified that the blood test performed at 6:00 p.m. showed a blood alcohol level of 0.7mg/dl and that this level was so low it was reported as 0% of alcohol.
21. Dr. Gad opined that based upon the lab results taken some 9 hours after the accident, Plaintiff was highly intoxicated by alcohol at the time of his fall and that his intoxication was the proximate cause of Plaintiff's fall. Dr. Gad's written report incorrectly stated that Plaintiff's urine was tested for alcohol concentration.
22. Defendants have the burden of proving that Plaintiff's fall was proximately caused by his intoxication. The sufficiency of Defendants' proof of intoxication is dependent upon the weight given to the testimony of Dr. Gad, a board-certified toxicologist with a Ph.D in pharmacology/toxicology. The smell of alcohol on Plaintiff's breath and the negligible blood alcohol reading from the lab results taken 9 hours later, standing alone, are insufficient proof that intoxication was the proximate cause of the injury. Also, there is no evidence that due to impaired judgment Plaintiff had deviated from Defendant-Employer's established procedure for installing ceiling joists when he fell, or that a worker would not have fallen under similar circumstances unless he was intoxicated.
23. Dr. Gad noted that Plaintiff had a blood alcohol level of 0.7 milligrams per deciliter (mg/dl) from a sample taken 9 hours after the time of the accident. Extrapolating backwards, Dr. Gad opined that Plaintiff's blood alcohol level at the time of the accident would most likely have been 0.25 g/dl. Considering that the legal standard for intoxication is 0.08 g/dl, Plaintiff's blood alcohol level at the time of the accident would have been almost 3 times the legal limit of intoxication. Dr. Gad opined that Plaintiff blood alcohol level was high enough to impair his judgment and motor performance at the time of the accident and that Plaintiff's level of blood alcohol "would have significantly contributed and been causative of any accident." The Full Commission gives great weight to the expert opinion testimony of Dr. Gad on Plaintiff's level of impairment or intoxication at the time of his fall. Although Dr. Gad's testimony was confusing at times and inconsistent with his written report in some instances, there is no expert medical testimony to contradict his opinions. Dr. Miller testified that he would defer to a toxicologist on the issue of Plaintiff's intoxication. Dr. Klinker and Mr. Register deferred to a toxicologist on the reading and analysis of Plaintiff's blood test results.
24. The Full Commission finds that Plaintiff's fall on March 2, 2004 was proximately caused by his impairment or intoxication.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On March 2, 2004, Plaintiff sustained an injury from a fall in the course of his employment with Defendant-Employer; however, Plaintiff's injury is not compensable because it was proximately caused by his intoxication. N.C. Gen. Stat. § 97-12.
2. Plaintiff is not entitled to any further compensation under the Act as a result of his March 2, 2004 injury. N.C. Gen. Stat. § 97-12.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for further medical and indemnity compensation is DENIED.
2. Each side shall pay its own costs.
This the __ day of September 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER